

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RANDALL PATORNO                                    CIVIL ACTION

VERSUS                                             NO. 05-769

N. BURL CAIN, WARDEN ET AL.                        SECTION "T" (2)


## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary. See 28 U.S.C. § 2254(e)(2).[1] For the following reasons, I recommend that

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

the instant petition for habeas corpus relief be **DENIED** and the petition **DISMISSED**

**WITH PREJUDICE**.

I.    FACTUAL AND STATE PROCEDURAL BACKGROUND

The petitioner, Randall Patorno, is an inmate incarcerated in the Louisiana State

Penitentiary in Angola, Louisiana.[2]  On April 21, 1999, Patorno was indicted by a St.

Tammany Parish grand jury for second degree murder, a violation of La. Rev. Stat.

14:30.1.[3]  The Louisiana First Circuit Court of Appeal summarized the relevant facts

established at Patorno's trial as follows:

> On March 23, 1999, Daniel Kuhl, a maintenance person who worked
> for Country Square Apartments in Slidell, Louisiana, went to the apartment
> complex to clean up a pile of trash that he noticed while walking with the
> owner of the apartment buildings the day before. Kuhl walked down a
> pathway from the edge of one of the buildings to a drainage canal and
> observed the debris located in the ditch. The pile of debris contained a roll
> of fencing and a Christmas tree.  Kuhl realized that there was also a human
> body located in the pile of debris when he saw what he thought was a
> shoulder, a shirt, and an arm. Kuhl immediately used his cellular telephone
> to call 911 to inform the police of his discovery.
> On March 14, 1999, several days before the discovery of the body,
> Brenda Carter reported that her seventeen-year-old nephew, B.C., who she
> had raised from the age of two, was missing. Her last contact with B.C. was
> when she dropped him off at work on the evening of Friday, March 12th.
> He worked at a McDonald's Restaurant in Slidell. B.C. did not come home
> after work Friday, and although Carter made several attempts to contact

---

[2]Record Doc. No. 1.

[3]St. Rec. Vol. 2 of 5 at p. 51, Indictment, 4/21/99.

him by paging him and calling his associates, she did not hear from him on Saturday or Sunday. Carter decided to contact the police when she arrived home from work on Sunday night.

Detectives of the Slidell Police Department conducted an investigation as a result of the missing person report. Shortly before B.C.'s disappearance, he accompanied Vivian Pratt to the defendant's apartment. After getting off of work, B.C. met Pratt because she had located his pager, which he had lost the night before. They met in an area where drugs were frequently sold at a home referred to as "Big Bob's." B.C. sold drugs, specifically crack cocaine, and gave Pratt some drugs because she found and returned his pager. Pratt told B.C. that she would be walking to the defendant's apartment to use the drugs that he had given her and invited him to come along. B.C. decided to join her.

During the trial, Pratt testified that when they arrived at the defendant's apartment, she introduced B.C. to the defendant, and B.C. gave the defendant and Pratt some drugs in exchange for their hospitality. B.C. then laid down on the defendant's love seat and fell asleep while the defendant and Pratt used the drugs. Pratt later awakened B.C. to ask him for more drugs so that she could sell them at "Big Bob's." According to Pratt, B.C. gave her about $100 worth of crack. She gave some of the drugs to the defendant and then left the apartment to sell the rest. When Pratt left the apartment at about 3:15 a.m., B.C. was sleeping on the defendant's love seat. After Pratt sold the drugs, she called the defendant's apartment to speak with B.C. but the defendant told her that B.C. had left. Pratt tried to contact B.C. several times by paging him but was unsuccessful.

As a result of the information received during the missing person investigation, the police executed a search warrant for the defendant's apartment and interviewed the defendant. During the interview, the defendant confirmed that B.C. had come to his apartment on the night in question. He stated, however, that B.C. was only there for a short period of time and that he left about thirty minutes after Pratt left to sell some of B.C.'s drugs. The defendant stated that he assumed that B.C. left to go look for Pratt since she never came back to the apartment with his money or the drugs.

After the body found by Kuhl on March 23rd was identified as B.C., the missing person investigation became a murder investigation. The police

conducted a search of the area where the body was located and recovered a hammer and the victim's wallet and driver's license. The police also executed another search warrant for the defendant's apartment. The defendant was arrested and re-interviewed. During this interview, the defendant stated that after Pratt left his apartment to sell some of the victim's drugs, he began badgering the victim for more drugs. He further stated that, as a result, the victim became angry and pulled a gun out and the defendant hit him with a hammer three times in self-defense. The defendant was charged and subsequently convicted of second degree murder.

State v. Patorno, 822 So. 2d 141 (La. App. 1st Cir. 2002); State Record Vol. 1 of 5, 1st Cir. Opinion, 2001-KA-2585, 6/21/02.

Patorno was tried before a jury and found guilty of second degree murder on April 20, 2001.[4] He was sentenced on June 11, 2001 to life in prison without benefit of probation, parole or suspension of sentence.[5] His counsel's motions for post-verdict judgment of acquittal and for a new trial, alleging that the facts were contrary to the law and evidence and the court erred when it denied his request for a jury charge, were denied on that same date prior to sentencing.[6] After sentencing, the motion of Patorno's counsel for reconsideration of the sentence as unconstitutionally excessive was also

---

[4]St. Rec. Vol. 5 of 5 at p. 864; Trial Transcript, 4/20/01.

[5]St. Rec. Vol. 5 of 5 at p. 876, Sentencing Transcript, 6/11/01.

[6]St. Rec. Vol. 5 of 5 at pp. 874-75.

4

denied.[7] Patorno's counsel then moved for appeal and requested that the Louisiana Appellate Project be appointed as appellate counsel. The motion was granted.[8]

On direct appeal to the Louisiana First Circuit Court of Appeal, Patorno raised two assignments of error:[9] (1) The verdict of the jury was contrary to the law and evidence. (2) The jury should have been instructed that ten out of twelve jurors were required to agree on which of the two provisions of La. Rev. Stat. 14:30.1 applied to convict him. On June 21, 2002, the Louisiana First Circuit affirmed Patorno's conviction and sentence.[10]

Patorno's conviction became final 30 days after his conviction was affirmed, on July 21, 2002, because he did not seek rehearing or file for timely review in the Louisiana Supreme Court.[11] See Roberts v. Cockrell, 319 F.3d 690, 694 (5th Cir. 2003) (appeal is final when defendant does not timely proceed to next available step in appeal

---

[7]St. Rec. Vol. 5 of 5 at p. 876.

[8]St. Rec. Vol. 5 of 5 at pp. 876-77; St. Rec. Vol. 2 of 5 at p. 111.

[9]State v. Patorno, 822 So. 2d 141 (La. App. 1st Cir. 2002); St. Rec. Vol. 1 of 5, 1st Cir. Opinion, 2001-KA-2585, 6/21/02.

[10]Id.

[11]Pursuant to La. Code Crim. P. art. 922(C) and La. S. Ct. R. X§5(a), petitioner had 30 days from the issuance of the Louisiana First Circuit's opinion to file a timely writ application in the Louisiana Supreme Court, which he did not do.

process); accord McGee v. Cain, No. 03-30803, 2004 WL 1683100, at *1 (5th Cir. July 28, 2004), cert. denied, 125 S. Ct. 1324 (2005).

On April 7, 2003, Patorno filed an application for post-conviction relief in the state trial court asserting seven grounds for relief:[12] (1) The grand jury was unconstitutionally empowered, rendering the trial court without subject matter jurisdiction. (2) and (3) Statutory provisions of the Louisiana Code of Criminal Procedure article 413(B) effective at the time of petitioner's trial violated his due process and equal protection rights in connection with selection of the grand jury foreman. (4) Patorno received ineffective assistance of counsel at trial because his lawyer failed to object to the grand jury process. (5) The indictment failed to charge a statutory offense. (6) He received ineffective assistance of counsel at trial because his lawyer failed to investigate and subpoena material witnesses. (7) He received ineffective assistance of counsel at trial because his lawyer failed to seek a competency hearing after being informed of his mental disorder by his mother and sister.

On April 25, 2003, the trial court ordered the St. Tammany Parish District Attorney to respond to grounds (1), (2), (3) and (5) of Patorno's application relating to

---

[12]St. Rec. Vol. 1 of 5, Application for Post Conviction Relief, 4/7/03.

the grand jury and indictment and dismissed grounds (4), (6) and (7) regarding ineffective assistance of counsel, with written reasons.[13]

In response to grounds (1), (2) and (3) of Patorno's application, which related to selection of the grand jury foreman, the district attorney stated that petitioner had waived his right to challenge the selection process by failing to file a pretrial motion to quash the indictment.  In response to Patorno's fifth assignment of error, the district attorney repeated that petitioner had waived his right to challenge the foreperson selection process and added that the indictment complied with Louisiana procedural law.[14]

On June 11, 2003, the trial court adopted the district attorney's response as its own reasoning and denied Patorno's application as to the remaining issues.[15]

On June 16, 2003, Patorno filed a writ application in the Louisiana First Circuit Court of Appeal raising the same seven issues.[16]  The Louisiana First Circuit denied Patorno's application without reasons on October 20, 2003.[17]

---

[13]St. Rec. Vol. 1 of 5; Trial Court Order, 4/25/03.

[14]St. Rec. Vol. 1 of 5; District Attorney's Answer to Petition for Post Conviction Relief, 5/30/03.

[15]St. Rec. Vol. 1 of 5; Trial Court Order, 6/11/03.

[16]St. Rec. Vol. 1 of 5, Petition for Writ of Certiorari and/or Review from Denial of Post Conviction Relief in the St. Tammany Parish 22nd Judicial District Court, 6/16/03.

[17]St. Rec. Vol. 1 of 5, 1st Cir. Order, 2003-KW-1389, 10/20/03.

On October 27, 2003, Patorno filed a writ application in the Louisiana Supreme Court in which he raised the same seven grounds for relief.[18]  The Louisiana Supreme Court also denied the writ application without reasons on January 7, 2005.[19]

II.    FEDERAL PROCEDURAL BACKGROUND

On March 8, 2005, Patorno filed the instant petition for federal habeas corpus relief, seeking relief on the following three grounds:  (1) He was denied a fair and independent state court review.  (2)  The provisions of Louisiana Code of Criminal Procedure article 413(B) effective at the time of his trial violated his due process and equal protection rights in connection with selection of the grand jury foreman.  (3)  He received ineffective assistance of counsel.[20]

In its response, the State concedes that Patorno has exhausted his state court remedies as to the issues raised in the habeas petition.  The State argues, however, that

_____

[18]St. Rec. Vol. 1 of 5, Petition for Writ of Certiorari and/or Review, 10/27/03.

[19]State ex rel. Patorno v. State, 891 So. 2d 671 (La. 2005); St. Rec. Vol. 1 of 5, La. S. Ct. Opinion, 03-KH-3199, 1/07/05.

[20]Rec. Doc. No. 1, Memorandum in Support of Petition at p. 4.

the petition must be dismissed because the claims are without merit or procedurally barred from federal review.[21]  Patorno filed a traverse to the State's response.[22]

III.   STANDARDS OF A MERITS REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  Amended Sections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings. Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b) and (c)).

The state court's determinations of questions of fact are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)).   The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing

---

[21]Rec. Doc. No. 5.

[22]Rec. Doc. No. 6.

9

evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'" Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quotation omitted), aff'd in part & rev'd in part on other grounds, 532 U.S. 782 (2001). The Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000); accord Penry, 532 U.S. at 792-93. "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly." Price v. Vincent, 538 U.S. 634, 641 (2003) (quotation omitted); accord Bell v. Cone, 535 U.S. 685, 699 (2002). Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state

10

court's determination is objectively unreasonable." Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002). Petitioner must show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. Price, 538 U.S. at 641.

A.   Fair and Independent State Court Review

Patorno alleges that he was denied a fair and independent state court review because of the trial court's adoption of the district attorney's response to his application for post-conviction relief and the denial of his writ applications without reasons by the Louisiana First Circuit Court of Appeal and the Louisiana Supreme Court.

Generally, a federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law." Wilkerson v. Whitley, 16 F.3d 64, 67 (5th Cir. 1994) (quotation omitted). The federal court's analysis focuses on due process considerations, and due process requires that the court grant the writ only when the errors of the state court make the underlying proceeding fundamentally unfair. Neyland v. Blackburn, 785 F.2d 1283, 1293 (5th Cir. 1986) (citations omitted). Habeas corpus review is limited to questions of constitutional dimension.

Patorno has failed to assert a constitutional issue arising out of the state trial court's adoption of the St. Tammany Parish District Attorney's response to grounds (1), (2), (3) and (5) of Patorno's application for post-conviction relief. This court cannot

11

consider whether the state trial court complied with state procedural law with respect to issuing its denial of Patorno's application, although this court can and will consider whether the denial complied with the mandates of federal procedural due process.

The state court's factual determination that Patorno failed to file a pretrial motion to quash the indictment is not only presumed to be correct, it was based on a reasonable determination of the facts. (Indeed, Patorno argues in this petition that his trial counsel was ineffective for failing to file such a motion.) The remaining conclusions in the trial court's decision are questions of state procedural law only.

Petitioner cites Bright v. Westmoreland County, 380 F.3d 729 (3d Cir. 2004), for the proposition that a trial court should not adopt verbatim an opinion and order drafted by opposing counsel. In Bright, a civil case for damages, the trial judge told counsel that he intended to grant defendants' motion to dismiss, although plaintiff's deadline to file an opposition memorandum had not yet expired. The judge ordered defense counsel to submit a proposed opinion and order, which the court then adopted virtually verbatim. Id. at 730-31. Significantly, the judge's opinion included a dismissal of one of plaintiff's state law claims, which the defendants had not even argued in their motion to dismiss, but which they had included in their proposed opinion. Id. at 731.

The Third Circuit reversed and remanded, holding that the trial judge had failed to perform his judicial function.  The appeals court noted that there was no record evidence that the judge had conducted his own independent review of the facts and the law, or that the opinion was the product of his own judgment.  Id. at 732.

Patorno's case is different from Bright.  The trial judge in the instant case was deciding an application for post-conviction relief, after having presided over the underlying criminal trial.  She was well aware of the facts and procedural history of the case.  There is no dispute that Patorno failed to file a pretrial motion to quash the indictment, which is the only fact at issue in the opinion.

Most importantly, however, Patorno has failed to establish that the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'"  Penry, 215 F.3d at 507.  The Third Circuit's opinion in Bright is neither binding nor persuasive as to this issue.  The Supreme Court has held "that even when the trial judge adopts proposed findings verbatim, the findings are those of the court and may be reversed only if clearly erroneous."  Anderson v. Bessemer City, 470 U.S. 564, 572 (1985); accord McLennan v. American Eurocopter Corp., 245 F.3d 403, 409 (5th Cir. 2001).

As previously stated, the trial judge's factual findings are undisputed and her legal conclusions were not contrary to and did not involve an unreasonable application of clearly established Supreme Court precedent. On this record, the state court's adoption of the district attorney's opinion as the court's own (although not a procedure that this court can recommend) is not an abrogation of the court's judicial function rising to constitutional dimensions sufficient to support habeas relief.

Thus, Patorno's claim is without merit.

B.    Selection of Grand Jury Foreperson

Patorno argues that Louisiana Code of Criminal Procedure article 413(B), as to the version in effect when he was indicted in April 1999, violated his due process and equal protection rights under the Fourteenth Amendment to the United States Constitution, his right to an impartial jury under the Sixth Amendment to the United States Constitution and his rights under the Louisiana Constitution. Patorno makes three arguments under this assignment of error: (1) article 413(B) was a special or local law that violated article III, § 12(A)(3) of the Louisiana Constitution and deprived him of due process because it "treated him differently from the whole class of citizens within the State of Louisiana," Record Doc. No. 1 at p.11; (2) the method of selecting the grand jury foreperson was susceptible of race and gender discrimination because the foreperson of

14

his grand jury was "hand-picked" by the judge; and (3) the indictment failed to charge an offense because the grand jury was unconstitutionally impaneled and therefore the trial court lacked subject matter jurisdiction to prosecute him.

As to petitioner's first argument that article 413(B) violated the Louisiana Constitution, again, a federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law." Wilkerson, 16 F.3d at 67. This court's analysis focuses on due process considerations, and due process requires that the court grant the writ only when the errors of the state court make the underlying proceeding fundamentally unfair. Neyland, 785 F.2d at 1293. Thus, the court considers only Patorno's second and third arguments, based on federal constitutional law.

Article 413(B), as it was in effect when Patorno was indicted, provided:

> In parishes other than Orleans, the court shall select one person from the grand jury venire to serve as foreman of the grand jury. The sheriff shall draw indiscriminately and by lot from the envelope containing the remaining names on the grand jury venire a sufficient number of names to complete the grand jury.

La. Code Crim. Proc. art. 413(B) (emphasis added) (prior to amendment by Acts 1999, No. 984, § 1, approved July 9, 1999). Thus, under the pre-July 1999 law in Louisiana,

> the judge selects the foreperson from the grand jury venire before the remaining members of the grand jury have been chosen by lot. . . . As a result, when the Louisiana judge selected the foreperson, he also selected one member of the grand jury outside of the drawing system used to

compose the balance of that body. These considerations require us to treat
the case as one alleging discriminatory selection of grand jurors.

Campbell v. Louisiana, 523 U.S. 392, 396 (1998).

The Louisiana legislature amended article 413(B) in July 1999 to delete the
emphasized language in the quotation above and to provide instead for random selection
of the foreperson from among the already impaneled grand jury members. La. Code
Crim. Proc. art. 413(B) (as amended by Acts 1999, No. 984, § 1).[23] The amendment was
enacted in response to Campbell. In Campbell, which was decided in April 1998, the
Supreme Court had held that a white criminal defendant has third-party standing to raise
due process and equal protection challenges to the systematic exclusion of African-
Americans from his grand jury and, specifically, to the portion of article 413(B)
emphasized above. Peterson v. Cain, 302 F.3d 508, 510 (5th Cir. 2002).

"[T]o be entitled to habeas relief [in a case alleging unconstitutional grand jury
selection,] a claimant is required to prove discrimination under the standards set out in
the Supreme Court's cases." Rideau v. Whitley, 237 F.3d 472, 484-85 (5th Cir. 2000)
(emphasis added) (citing Rose v. Mitchell, 443 U.S. 545, 565 (1979)). The Supreme
Court in Campbell emphasized that the criminal defendant must show, as a precondition

---

[23]The 1999 amendment applied to all parishes other than Orleans Parish. The article was
amended again in 2001 to delete the exceptions for Orleans Parish. Acts 2001, No. 281, § 1.

to raising a third-party due process or equal protection challenge, that he suffered an

"injury in fact" from the exclusion of African-Americans from the grand jury. The Court

explained:

> Regardless of his or her skin color, the accused suffers a significant injury
> in fact when the composition of the grand jury is tainted by racial
> discrimination. Discrimination on the basis of race in the selection of
> members of a grand jury . . . strikes at the fundamental values of our
> judicial system because the grand jury is a central component of the
> criminal justice process.

Campbell, 523 U.S. at 398 (quotation omitted).

Furthermore, "[t]o assert the rights of those venirepersons who were excluded

from serving on the grand jury in his case, [petitioner] must prove their exclusion was

on account of intentional discrimination." Id.

In the instant case, Patorno cannot establish any race or gender[24] discrimination

in the selection of the foreperson of his grand jury. In connection with this claim,

Patorno has attached to his complaint copies of certified records from the St. Tammany

Parish Registrar of Voters Office. Record Doc. No. 1, Petitioner's Exh. A-1. According

to this evidence, the foreperson of petitioner's grand jury, Carolyn T. Terrell, was both

---

[24]The United States Supreme Court ruled long ago that exclusion of women from a federal grand
jury panel was unconstitutional. Ballard v. United States, 329 U.S. 187, 195-96 (1946); see also J.E.B.
v. Alabama ex rel. T.B., 511 U.S. 127 (1994) (gender-based peremptory challenges to petit jurors violate
the Constitution).

black and female.  Because there was no intentional race or gender discrimination in the selection of this grand jury foreperson, Patorno suffered no injury in fact because of her selection and cannot state a claim for a constitutional violation.  Guillory v. Cain, 303 F.3d 647, 653 (5th Cir. 2001).

Moreover, because Patorno cannot prove any discrimination, the grand jury was not unconstitutionally impaneled and the trial court was not deprived of subject matter jurisdiction.  Accordingly, Patorno's claim that the grand jury was constitutionally defective lacks merit.

C.    Ineffective Assistance of Counsel

In his final claim, Patorno alleges that his trial counsel rendered ineffective assistance because counsel failed to (1) request appointment of a sanity commission and (2) move to quash the indictment for lack of jurisdiction and racial discrimination.

Patorno raised these issues in his state post-conviction application as issues numbered (4) and (7).  The trial judge denied the application, dismissing these two claims in her order dated April 25, 2003.  The judge ruled that, having reviewed the transcripts of the proceedings and based upon the standards set forth in Strickland v. Washington, 466 U.S. 668 (1984), Patorno's trial counsel had performed adequately. Specifically, the state court judge noted that counsel's decision not to request a

18

competency hearing was well founded, that competency hearings are not routinely ordered for every defendant who has had a past drug problem and that none was required in the instant case.[25]

The Louisiana First Circuit Court of Appeal and the Louisiana Supreme Court accepted this ruling by denying Patorno's subsequent writ applications without additional reasons. Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991).

The issue of effective assistance of counsel is a mixed question of law and fact. Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994). Thus, the question before this court is whether the state courts' denial of relief was contrary to or an unreasonable application of Strickland, 466 U.S. at 668, in which the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel.

In Strickland, the Court held that first "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. The Court defined a reasonable probability as "a probability sufficient to undermine confidence in the outcome." Id.

---

[25]St. Rec. Vol. 1 of 5; Trial Court Order, 4/25/03.

In deciding ineffective assistance of counsel claims, the district court need not address both prongs of the conjunctive <u>Strickland</u> standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. <u>United States v. Kimler</u>, 167 F.3d 889, 893 (5th Cir. 1999). A federal habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' But it is not enough, under <u>Strickland</u>, 'that the errors had some conceivable effect on the outcome of the proceeding.'" <u>Motley</u>, 18 F.3d at 1226 (quoting <u>Strickland</u>, 466 U.S. at 693).

On habeas review, scrutiny of counsel's performance "must be highly deferential," and the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance." <u>Moore v. Johnson</u>, 194 F.3d 586, 591 (5th Cir. 1999) (citing <u>Strickland</u>, 466 U.S. at 689-90). In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct and to evaluate the conduct from counsel's perspective at the time of the proceeding. <u>Strickland</u>, 466 U.S. at 689; <u>Neal</u>, 286 F.3d at 236-37; <u>Clark v. Johnson</u>, 227 F.3d 273, 282-83 (5th Cir. 2000). The reviewing "court must indulge a 'strong presumption' that counsel's conduct

20

falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." Bell, 535 U.S. at 702 (citing Strickland, 466 U.S. at 689, 690).

Federal courts have consistently recognized that such tactical decisions, when supported by the circumstances, are objectively reasonable and do not amount to unconstitutionally deficient performance. Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999) (citing Rector v. Johnson, 120 F.3d 551, 564 (5th Cir. 1997); Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir. 1994)). Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. Strickland, 466 U.S. at 689; Moore, 194 F.3d at 591.

      1.    Counsel's Failure to Move for Appointment of Sanity Commission

Patorno argues that his trial counsel was constitutionally inadequate because he failed to request appointment of a sanity commission and a competency hearing. The conviction of a legally incompetent person violates constitutional due process. Mata v. Johnson, 210 F.3d 324, 329 (5th Cir. 2000) (citing Pate v. Robinson, 383 U.S. 375 (1966)). A trial court has a duty to hold a competency hearing when "the objective facts known to the trial court were sufficient to raise a bona fide doubt as to [the petitioner's] competency." Enriquez v. Procunier, 752 F.2d 111, 113 (5th Cir. 1984); accord

21

Thompson v. Blackburn, 776 F.2d 118, 123 (5th Cir. 1985). The standard of competence is "'whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and a rational as well as factual understanding of the proceedings against him.'" Mata, 210 F.3d at 329 n.2 (quoting Godinez v. Moran, 509 U.S. 389, 396 (1993)) (internal quotations omitted); accord Dunn v. Johnson, 162 F.3d 302, 305 (5th Cir. 1998).

Patorno alleges in his petition that his mother and sister told his trial counsel that he had a mental disorder and that, if counsel had investigated, he would have learned that Patorno had suffered from mental disorders and was under psychiatric care since childhood and had been hospitalized at least once for substance abuse and mental disorders. Patorno proffers the joint affidavit of his stepmother and stepsister to support this claim.

His stepmother and stepsister state that Patorno has been treated for "mental illness, addiction and disorders" many times since childhood and that his "illnesses often clouded his judgment and have had a major effect on his reality." Record Doc. No. 1, unnumbered exhibit, affidavit of Ethel D. Patorno and Reneé Lewis dated February 14, 2005. They further state that

> [h]e was first diagnosed at the age of ten and treated through Lutheran
> Social Services. It was found that he did not receive "basic Mother's love"

as an infant and that was the root of his problems. Since that time he attended Teen Challenge, [and] a host of psychiatric facilities with the last being Mandeville Mental Hospital in 1993.

Id. The stepmother and stepsister also state that they advised Patorno's trial counsel several times of his mental health history but that counsel "informed us that he thought this to be of no relevance and therefore would not introduce this at trial." Id.

The evidence shows that Patorno's trial counsel was aware of the background information and made a strategic decision that he would not use it at trial. The joint affidavit shows that Patorno had not received any mental health treatment since 1993, six years before the murder and eight years before the trial. The affidavit does not establish what Patorno's psychiatric diagnosis was at any time of his life, much less at any relevant time. Counsel's decision not to use the information about petitioner's mental health history at trial falls "within the wide range of objectively reasonable professional assistance." Moore, 194 F.3d at 591.

Patorno has presented no reason to believe that his counsel was actually deficient in this regard. He has presented no evidence to indicate that he was not competent to stand trial or to demonstrate that the results of a psychiatric evaluation would have been favorable to his defense. "This claim is at best conclusional. [Petitioner] fails entirely to explain how counsel's failure to [investigate his mental competency] would have

23

altered the outcome of trial. Conclusional allegations of ineffective assistance of counsel are insufficient to establish habeas relief." Wilson v. Cockrell, No. 02-41084, 2003 WL 21672834, at *9 (5th Cir. July 17, 2003) (citing Miller v. Johnson, 200 F.3d 274, 282 (5th Cir. 2000)).

This claim falls well short of demonstrating that there is a "reasonable probability . . . that the result of the proceeding would have been different" if evidence of petitioner's alleged mental illness had been introduced. Strickland, 466 U.S. at 694. The state courts' denial of relief was not contrary to or an unreasonable application of Strickland. This claim is without merit.

### 2. Counsel's Failure to Challenge the Grand Jury Selection Process

Patorno contends that his counsel was ineffective for failing to file a motion to quash the indictment for lack of jurisdiction and racial discrimination, based on the allegedly unconstitutional selection of the grand jury foreman. He argues that counsel had a duty to challenge the grand jury foreperson's selection through a motion to quash. The record indicates, however, that at the time of Patorno's prosecution, counsel's failure to file a motion to quash the grand jury indictment was reasonable and not unconstitutionally deficient.

Under Louisiana law, a motion to quash a grand jury indictment may be filed if, among other things, "the manner of selection of . . . the grand jury venire, or the grand jury was illegal." La. Code Crim. P. art. 533.[26] However, federal courts have long recognized that the filing of a motion to quash of this type is generally a matter of professional judgment left to the discretion of counsel. Williams v. Beto, 354 F.2d 698, 703 (5th Cir. 1965) (citing Michel v. Louisiana, 350 U.S. 91 (1955)); accord United States v. Lewis, 786 F.2d 1278, 1283 n.4 (5th Cir. 1986).

In Michel, the Supreme Court held that the failure of counsel to move to quash the indictment on grounds that the grand jury was unconstitutionally impaneled because of the historical exclusion of African-Americans from the grand jury, including such exclusions in the consolidated cases before the Court, was not deficient performance per se and was within the range of sound trial strategy, given the facts of the case. Michel, 350 U.S. at 100.

---

[26]La. Code Crim. P. art. 533 provides:
A motion to quash an indictment by a grand jury may also be based on one or more of the following grounds:
(1)   The manner of selection of the general venire, the grand jury venire, or the grand jury was illegal.
(2)   An individual grand juror was not qualified under Article 401.
(3)   A person, other than a grand juror, was present while the grand jurors were deliberating or voting, or an unauthorized person was present when the grand jury was examining a witness.
(4)   Less than nine grand jurors were present when the indictment was found.
(5)   The indictment was not indorsed "a true bill," or the endorsement was not signed by the foreman of the grand jury.

In the instant case, the decision of Patorno's counsel not to challenge systematic discrimination against African-Americans in the grand jury foreperson selection process was not outside the reasonable discretion afforded counsel. As previously noted, petitioner's evidence establishes that the grand jury foreperson in his case was a black woman. Thus, even though Patorno had standing, pursuant to Campbell, to challenge the exclusion of African-Americans from selection as the grand jury foreperson, no such discrimination occurred in his case. A motion to quash the indictment on grounds of racial discrimination would have been pointless. "'Counsel is not required to engage in the filing of futile motions. The filing of pretrial motions falls squarely within the ambit of trial strategy.'" Lewis, 786 F.2d at 1283 n.4 (quoting Murray v. Maggio, 736 F.2d 279, 283 (5th Cir. 1984) (citing Williams, 354 F.2d at 703)).

Therefore, the state courts' denial of relief was not contrary to or an unreasonable application of Strickland. Patorno has failed to establish that counsel's performance was constitutionally deficient in this regard. Patorno is not entitled to relief on this claim.

## RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the petition of Randall Patorno for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this _____ day of July, 2005.



JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

27